1

2

3

4

5

6

7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8   MICHAEL P. CAVARRETTA,                        )
                                                  )
9           Petitioner,                           )        2:09-cv-02228-PMP-VCF
                                                  )
10  vs.                                           )        **ORDER**
                                                  )
11  ANTHONY SCILLIA, *et al.*,                    )
                                                  )
12          Respondents.                          )
    _____/

13

14          This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner,

15  a state prisoner, is proceeding *pro se*.  Respondents have filed an answer to the petition (ECF No.

16  15) and petitioner has filed his reply (ECF No. 22).

17  **I.      PROCEDURAL HISTORY**

18          Petitioner was charged by way of an Information filed October 5, 2005, with one count of

19  Burglary, one count of Grand Larceny and, as an alternative to count two, one count of Robbery.

20  Ex. 1.[1]  The information also provided petitioner notice of the state's intent to seek habitual criminal

21  adjudication based on four prior felony convictions. *Id.*  Petitioner pled not guilty and thereafter was

22  convicted following a jury trial on the charges of burglary and robbery.  Ex. 2. Petitioner was

23  sentenced to two concurrent terms of ten years to life on the burglary and robbery convictions and

24

25  _____

26          [1] The exhibits referenced in this Order and identified as "Ex." were provided by respondents in support
    of their Answer and are found in the Court's record at attachments to the Answer at ECF No. 15.

the grand larceny charge was dismissed.  Ex. 3.  The sentence  included the habitual criminal

enhancement under Nevada Revised Statutes (NRS) § 207.010(b).  *Id.*

Petitioner appealed, filing his opening brief on June 1, 2007.  Ex. 4.  He raised four grounds

for relief including a claim that (1) the state had failed to prove his guilt on the charge of robbery

beyond a reasonable doubt; (2) that the state failed to prove his guilt on the charge of burglary

beyond a reasonable doubt; (3) that he was denied his right to confront witnesses and to the presence

of an attorney when the trial court admitted testimony from two witnesses that petitioner had been

properly advised of his *Miranda*[2] rights by Officer Oeland and then admitted into evidence

statements made by petitioner following these *Miranda* warnings; and (4) that he was denied due

process and subjected to cruel and unusual punishment where (i) the state failed to sufficiently prove

the required prior felony convictions, (ii) the state failed to prove sentencing under the "large

habitual criminal" statute was warranted, (iii) the sentencing procedures were improper, (iv) he was

denied the right to a jury in the habitual criminal adjudication, (v) and two life sentences for one

incident was cruel and unusual punishment because petitioner had only been sentenced to prison

once before.  Ex. 4.  The Nevada Supreme Court affirmed the conviction on October 22, 2007.  Ex.

5.

On December 26, 2008, petitioner filed his *pro se* petition for post-conviction relief with the

state district court, claiming his received ineffective assistance of counsel during plea negotiations;

that counsel failed to challenge the prior convictions used for the habitual criminal enhancement;

and that his sentence was excessive and not proportionate to his crime.  The petition was denied by

the district court on April 17, 2009.  Ex. 7.  This decision was affirmed by the Nevada Supreme

Court on October 27, 2009.  Ex. 8.

---

[2] *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602 (1966).

2

1    Petitioner filed his federal habeas petition in this action on November 20, 2009, raising four

2    grounds for relief.  Respondents filed their answer and petitioner replied.  The merits of his claims

3    are discussed below.

4    **II.    DISCUSSION**

5        A.    Legal Standard

6            28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty

7    Act (AEDPA), provides the legal standards for this Court's consideration of the petition in this case:

8            An application for a writ of habeas corpus on behalf of a
         person in custody pursuant to the judgment of a State court shall not
9            be granted with respect to any claim that was adjudicated on the merits
         in State court proceedings unless the adjudication of the claim --

10
             (1)    resulted in a decision that was contrary to, or involved
11       an unreasonable application of, clearly established Federal law, as
         determined by the Supreme Court of the United States; or
12
             (2)    resulted in a decision that was based on an
13       unreasonable determination of the facts in light of the evidence
         presented in the State court proceeding.

14

15   28 U.S.C. § 2254(d).  These standards of review "reflect the ... general requirement that federal

16   courts not disturb state court determinations unless the state court has failed to follow the law as

17   explicated by the Supreme Court."  *Davis v. Kramer*, 167 F.3d 494, 500 (9th Cir. 1999).  Therefore,

18   this Court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists

19   could disagree that the state court's decision conflicts with [Supreme Court] precedents."

20   *Harrington v. Richter,* 562 U.S. ___, ___, 131 S.Ct. 770, 786 (2011).

21       A state court decision is contrary to clearly established Supreme Court precedent, within the

22   meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set

23   forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially

24   indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result

25

26
                                        3

1    different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63 (2003) (*quoting*

2    *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and *citing Bell v. Cone*, 535 U.S. 685, 694 (2002).

3        A state court decision is an unreasonable application of clearly established Supreme Court

4    precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct

5    governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

6    principle to the facts of the prisoner's case." *Andrade*, 538 U.S. at 74 (*quoting Williams*, 529 U.S. at

7    413). The "unreasonable application" clause requires the state court decision to be more than

8    incorrect or erroneous; the state court's application of clearly established law must be objectively

9    unreasonable. *Id.* (*quoting Williams*, 529 U.S. at 409).

10       In determining whether a state court decision is contrary to federal law, this Court looks to

11   the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991);

12   *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

13   Furthermore, "a determination of a factual issue made by a State court shall be presumed to be

14   correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by

15   clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

16       B.    <u>Analysis</u>

17       Petitioner raises four grounds for relief in this federal petition, including claims that he was

18   convicted on insufficient evidence on the robbery and the burglary charges; that he was denied his

19   right to counsel and to confront the witnesses against him and to remain silent during police

20   interrogations when the court improperly allowed testimony about the *Miranda* warnings and

21   statements made by petitioner during post-arrest interrogations; that his Due Process and Eighth

22   Amendment rights were violated during sentencing; and that he receive ineffective assistance of

23   counsel.

24

25

26

4

In his reply, petitioner argues on the basis of elements of the crimes as recognized under common law.  Where the convictions were obtained under Nevada law which define the elements differently, these arguments cannot hold sway.

<u>Ground One</u>

Petitioner claims:

1.   There was insufficient evidence to support a conviction for robbery beyond a reasonable doubt based on the following facts:

    a.   The state did not prove each and every element beyond a reasonable doubt.

    b.   Robbery is a crime against a person and the state did not prove that Petitioner took personal property against Mitchell Medina or Donald Hill as alleged in the complaint.

    c.   There was no evidence that the items taken from Macy's Department store were personal property of Mitchell Medina and/or Donald Hill. Even if the state could prove such, the information and jury instructions were not plea[d] as such.

    d.   The items taken from Macy's Department store were not taken in the presence of Mitchell Medina or Donald Hill to support a conviction for robbery pursuant to the statute.

    e.   There was no evidence presented that Petitioner used force to take or retain the property as required by statute to support a conviction for robbery.

2.   There was insufficient evidence to support the Burglary conviction beyond a reasonable doubt.

The Nevada Supreme Court's determination of these issues were contrary to and a [sic] unreasonable application of clearly established precedent of the Supreme Court of the United States.

Petition, pp. 3-4.

Under Nevada law, robbery is defined as:

... the unlawful taking of personal property from the person of another, or in the person's presence, against his or her will, by means of force or violence or fear of injury, immediate or future, to his or her person or property, or the person or property of a member of his or her family, or of anyone in his or her company at the time of the robbery. A taking is by means of force or fear if force or fear is used to:

5

1

      (a) Obtain or retain possession of the property;
      (b) Prevent or overcome resistance to the taking; or

2

      (c) Facilitate escape.

3

      The degree of force used is immaterial if it is used to compel
acquiescence to the taking of or escaping with the property. A taking

4

constitutes robbery whenever it appears that, although the taking was
fully completed without the knowledge of the person from whom taken,

5

such knowledge was prevented by the use of force or fear.

6

N.R.S. 200.380.

7

      The Nevada Supreme Court addressed this claim in its Order of Affirmance on direct appeal

8

applying the legal standard articulated by the United States Supreme Court in *Jackson v. Virginia*,

9

443 U.S. 307, 319 (1979). Ex. 5, p. 1 n 1. Under the holding of *Jackson*, "the relevant question is

10

whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier

11

of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.

12

Having set out the appropriate federal legal standard, the state court then proceeded to outline the

13

evidence that was established at trial upon which it relied in determining the sufficiency of the

14

evidence and considering petitioner's related arguments. The court noted that trial evidence

15

demonstrated that an individual was observed via video surveillance entering the store, grabbing

16

clothing from a rack without apparent concern for the type or size of the item and quickly exiting the

17

store. Ex. 5, p. 1. This information was provided to mall security officers in the parking lot and a

18

security vehicle was moved to block the exit of a vehicle parked outside the Macy's entrance in a

19

fire lane. *Id.* at 2. The security officers then observed petitioner leave Macy's with an armful of

20

clothing, which he placed into the same vehicle that they had blocked with their security vehicle. *Id.*

21

The security officers and Macy's "loss prevention agents" testified that petitioner then attempted to

22

enter the vehicle and "when [the security officers] tried to pull him away from the vehicle he was

23

combative and physically resisted." *Id.*

24

      The court held that it was sufficient that the persons from whom the property was taken, or in

25

this instance the persons who were present and were met with physical resistence when they

26

6

1    attempted to stop the taking of the property, to have an employee/employer relationship with the true

2    owner in order to meet the possessory interest element of the crime of robbery. *Id.,* citing generally

3    *Klein v. State,* 105 Nev. 880, 884-84, 784 .2d 970, 973-74 (1989) and *People v. Gilbeaux,* 3

4    Cal.Rptr.3d 835, 841-42 (Cal. Ct. App. 2003) for the proposition that even an employee of a related

5    business, present at the scene in the course of their employment, are considered sufficiently related

6    to the true owner or the property to satisfy the possessory interest element of the crime. *Id.*, p. 2, n

7    2.

8          Petitioner's argument that he did not rob Medina or Hill of personal property because he did

9    not take the items from their person was also rebutted by the evidence. The court observed that the

10   officers testified that "when they drove up to Macy's, they observed Cavaretta exit with the

11   merchandise, place it in his vehicle, and attempt to get away." *Id.* Their attempts to stop petitioner

12   from leaving with the merchandise were met with force, when petitioner "pushed them." *Id.* at 2.

13   *See also* Ex. 9, transcript pages 70, 76-77. Even this amount of force was sufficient, under the

14   statute, to allow the jury to conclude that the force element of robbery had been met by petitioner's

15   attempt to escape from the security officers, as the court noted.

16          Because there was evidence presented at trial sufficient for "any rational trier of fact to find

17   the essential elements" of the crime charged, petitioner's claim was properly denied by the state

18   court. *Chein v. Shumsky* 373 F.3d 978, 983 (9th 2004) quoting *Jackson,*443 U.S. at 324 n. 16, 99

19   S.Ct. 2781 (the *Jackson* standard "must be applied with explicit reference to the substantive

20   elements of the criminal offense as defined by state law"). Petitioner has not demonstrated that this

21   holding was, in fact, "contrary to and a [sic] unreasonable application of clearly established

22   precedent of the Supreme Court of the United States." Petition, p. 3-A.

23          Petitioner also baldly claims, without specifics, that there was insufficient evidence to

24   convict him on the burglary charge. *Id.* at 3. Although the claim was raised on appeal and reviewed

25   by the Nevada Supreme Court (*see* ex.5, p. 3), this Court need not consider bald and unsupported

26

1   claims.  *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995), *cert. denied*, 517 U.S. 1143 (1996);

2   *Adams v. Armontrout,* 897 F.2d 332, 334(8th Cir. 1990); *Blackledge v. Allison,*  431 U.S. 63, 76, 97

3   S.Ct. 1621, 1630 (1977).  This subpart of ground one is denied.

4                                   Ground Two

5          In ground two, petitioner claims that his Fifth and Sixth Amendment rights were violated.

6   Specifically, he claims:

7                  In violation of the right of confrontation, the sixth amendment right
                   to an attorney and the fifth amendment right to remain silent the state
8                  allowed two witnesses to testify that they heard officer Oeland
                   properly give petitioner Miranda warning; and then the state
9                  introduced statements made by Petitioner during his interrogation by
                   the police.  However, the Miranda warnings were improperly given.
10                 The Nevada Supreme Court's determination of these issues were
                   contrary to and a unreasonable application of clearly established
11                 Precedent of the Supreme Court of the United States.

12  Petition, p. 5 (punctuation and syntax in the original).

13         The United States Supreme Court held in *Miranda* that statements made by an defendant

14  "stemming from custodial interrogation of the defendant" cannot be used by the prosecution unless it

15  shows that the individual was advised of his or her rights against self-incrimination and to the

16  presence of counsel during questioning and voluntarily waived those rights. *Miranda v. Arizona,* 384

17  U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966).  However, giving the warnings and getting a waiver has

18  "generally produced a virtual ticket of admissibility." *Missouri v. Seibert*  542 U.S. 600, 608-609,

19  124 S.Ct. 2601, 2608 (2004); *see Berkemer v. McCarty*, 468 U.S. 420, 433, n. 20, 104 S.Ct. 3138

20  (1984) .

21         According to the transcripts of the trial, the prosecutor asked security officer Medina if he

22  was present when petitioner was approached and addressed by Las Vegas Metropolitan Police

23  (LVMP) Officer Oeland and whether Officer Oeland had advised petitioner of his rights. Ex. 9, Part

24  A, pp. 88-89. Medina answered in the affirmative. *Id.* This testimony was offered without objection

25  from the defense. *Id.*  Thereafter, Detective Morningstar of the LVMP also testified that she had

26

1  been patrolling the shopping mall with Officer Oeland, that they received a call about the "snatch

2  and grab" taking place, that she and Office Oeland had arrived at the scene after petitioner had been

3  restrained and that Officer Oeland had advised petitioner of his rights under *Miranda*. Ex. 9, Part A,

4  pp. 110- 115.   Again, there was no objection offered to this testimony.  *Id.*

5        Detective Morningstar proceeded to testify about incriminating statements that petitioner had

6  made to her after he was *Mirandized* and after petitioner had acknowledged his understanding of his

7  rights.  *Id.* pp. 115-116.  With the exception of testimony about petitioner's statement related to his

8  broken arm, this testimony was also offered without objection. *See id.* at 115-118.  These

9  incriminating statements included petitioner's admission that he entered Macy's with the plan to

10  snatch some shirts or clothing for his friends and leave without paying for them.  *Id.* at 116.

11       In considering this claim, the Nevada Supreme Court reviewed the evidence presented at

12  trial, which this Court outlines above, and noting the lack of objection from the defense, applied the

13  plain error standard holding that even if the admittance of the testimony was in error, it was harmless

14  in light of the other evidence admitted.  Ex. 5, pp. 3-4.

15       The United States Supreme Court has held that only when a trial error, which received no

16  contemporaneous objection, affects substantial rights of the party should the court exercise its

17  discretion to review the claim on appeal. *See U.S. v. Olano,* 507 U.S. 725, 732, 113 S. Ct. 1770,

18  1776 (1993).  Such a claim must be plain and must "seriously affect the fairness, integrity or public

19  reputation of judicial proceedings." *United States v. Young,* 470 U.S. 1, 15, 105 S. Ct. 1038, 1046

20  (1985).  In considering such plain error, the court must then determine whether, "'[the] given error'

21  had substantial and injurious effect or influence in determining the jury's verdict.'" *Christian v.*

22  *Rhode*, 41 F.3d 461, 468 (9th Cir.1994) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113

23  S.Ct. 1710 (1993)).

24       The Nevada Supreme Court's application of this standard and its ultimate conclusion to deny

25  the claim was not an objectively unreasonable application of clearly established United States

26

1    Supreme Court precedent.  The factual determinations required to reach its conclusion as to the

2    weight and strength of the evidence at trial was not objectively unreasonable as required to obtain

3    relief under 28 U.S.C. § 2254(d).  Ground two will be denied.

4                              Ground Three

5            Petitioner claims his right to Due Process as guaranteed by the Fourteenth Amendment was

6    violated by the court in adjudicating him a habitual criminal.  The claims argues:

7                    The court violated Petitioner's right to due process, right to a jury
                     trial, and protection from cruel and unusual punishment when
8                    sentencing Petitioner as a habitual criminal giving him two life
                     sentences based on the following.
9
             A.      The documents presented in support of a finding under NRS
10                   207.010 was infirmed [sic].

11           B.      The state failed to prove three or more felony convictions,
                     beyond a reasonable doubt.
12
             C.      The state failed to prove that sentencing Petitioner under the
13                   large habitual criminal statute NRS. 207.010 was warranted
                     beyond a reasonable doubt.
14
             D.      Petitioner's due process rights were violated when their
15                   decision were based on inaccurate information and they
                     failed to follow procedural guidelines and they failed to
16                   ensure that Petitioner received advance notice of the
                     evidence presented at the hearing:
17                           1.      No notice regarding the taped jail
                                     conversation that was used.
18                           2.      Inaccurate criminal history was used.
                             3.      The court used prior arrest and convictions
19                                   contrary to the statute.
                             4.      Judicial economy.
20
             E.      Petitioner was denied the right to a jury trial on the habitual
21                   criminal alegation.

22           F.      Two life sentences under the habitual criminal statute for one
                     incident, when Petitioner has only been to prison once before
23                   is cruel and unusual punishment.

24           The Nevada Supreme Court's determination of these issues were
             contrary to and a unreasonable application of clearly established
25           Precedent of the Supreme Court of the United States.

26

                                        10

Petition, pp. 7-7A (punctuation, spelling and syntax in the original).

The Supreme Court has recognized the legitimacy of a legislature's interest in treating repeat offenses more severely than first offenses. *See Rummel v. Estelle,* 445 U.S. 263, 276, 100 S.Ct. 1133 (1980) (noting the "valid interest" of a state in "dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law"). And, "a sentence which is within the limits set by a valid statute may not be overturned on appeal as cruel and unusual." *United States v. Washington,* 578 F.2d 256, 258 (9th Cir.1978)) *see also United States v. Klein,* 860 F.2d 1489, 1495 (9th Cir.1988)(overruled on other grounds). Therefore, if a sentence imposed under a valid state habitual criminal statute is within the limits of such a statute, it cannot be said to violate the Eighth Amendment's prohibition of cruel and unusual punishment.

Petitioner was adjudicated a habitual criminal and sentenced to two concurrent terms of ten years to life under NRS § 207.010(b). This adjudication was made after notice was provided to petitioner in the charging document (ex. 1) and after a hearing where the state provided evidence that petitioner had been previously convicted of at least three felonies, including crimes that would be felonies under Nevada law, most of which were violent crimes, and after petitioner had an opportunity to object or argue on his own behalf (ex. 10). During the hearing the petitioner addressed the court and offered justifications, explanations and excuses for his various violent crimes. *Id.,* pp. 9-24. His counsel also argued on his behalf. *Id.*, pp. 24-28. Finally, the judge made his determination, specifically noting that the recorded telephone conversations to which petitioner now objects played no part in his decision.[3] *Id.*, p. 28. The judge then exercised his discretion and

---

[3] The conversations, between petitioner and his girlfriend, included petitioner's statements that suggested in intent to flee the country to Antigua, where there is no extradition treaty with America, in order to avoid prison. Ex. 10, pp. 6-8.

11

1    adjudicated petitioner as a habitual criminal subject to a sentence enhancement under NRS §

2    207.010(b), the large habitual criminal statute.  *Id.,*pp. 32-33.

3         In the instant petition, petitioner offers no specifics as to why the convictions presented to

4    support the adjudication were infirm or in what way the evidence used to demonstrate the requisite

5    convictions was inaccurate.  He did not object to the documents during the sentencing and, as noted

6    by respondents, has not suggested that he was not the subject of the judgments.

7         Respondents argue that petitioner's assertion related to the purported failure of the court to

8    follow proper procedures at his sentencing, e.g. no notice of the intent to use taped jail calls, use of

9    inaccurate criminal history, use of prior arrest and convictions contrary to the statute, and

10   considerations of judicial economy in deciding his sentence, is a question of state law not subject to

11   federal habeas review.

12        This Court will not grant federal habeas relief on questions of state law.  *Estelle v. McGuire*,

13   502 U.S. 62, 68 (1991).  A state law issue cannot be transformed into one of federal constitutional

14   dimensions merely by invoking the specter of a due process violation.  *Langford v. Day*, 110 F.3d

15   1380, 1389 (9th Cir. 1996), *cert. denied*, 522 U.S. 881 (1997). Only if the state law creates a liberty

16   interest protected by the United States Constitution would violation of that law invoke federal

17   habeas protection.  For that to occur, the law must set forth substantive predicates to govern official

18   decision-making and it must contain explicitly mandatory language requiring a certain outcome if

19   the substantive predicate has been met.  *See Kentucky Dept. Of Corrections v. Thompson,* 490 U.S.

20   454, 462-63, 109 S. Ct. 1904 (1989).   Moreover, where the case is governed by the AEDPA, the

21   liberty interest must be one recognized by the United States Supreme Court.  *See Nunes v. Ramirez-*

22   *Palmer,* 485 F.3d 432, 443 (9th Cir. 2007) *cert.* denied 128S.Ct. 404 (2007).  Only if such a liberty

23   interest has been recognized by the United States Supreme Court can the state court's determination

24   of this claim be contrary to or an unreasonable application of clearly established federal law as

25   determined by the Supreme Court of the United States.

26

1    The Court agrees with the respondents' argument as to this subpart of ground three.  The

2    Nevada habitual criminal statute at issue here provides no specific notice requirements as to the

3    evidence or argument to be provided at the sentencing hearing and allows for the broad use of

4    judicial discretion in allowing the charge or dismissing it.  *See* NRS § 207.101(2).  Therefore, the

5    Court will dismiss ground three, subpart D as it fails to present a federal issue which this Court may

6    consider.

7    As to the subparts A-C, E and F, in deciding this claim, the Nevada Supreme Court noted

8    that petitioner had again failed to object to the admission of the certified judgments of conviction

9    and other documents provided by the state to support the habitual criminal adjudication, requiring

10   application of the plain error rule.  Ex. 5, p. 4.  The court proceeded then to discuss at some length

11   the circumstances of his sentencing hearing.  *Id.* at 4-5.  The court determined that petitioner had

12   failed to demonstrate that the sentencing court improperly considered factors such as judicial

13   economy and a need to protect merchants from shoplifters, citing state law.  *Id.* at 6. It concluded

14   that the felonies were properly authenticated and accepted and that he was not entitled to a jury trial

15   on the charge and the sentence did not constitute cruel and unusual punishment.  *Id.*, pp. 6-7.

16   This Court's review of the transcript of the sentencing hearing does not reveal the Nevada

17   Supreme Court's decision to be objectively unreasonable either in application of clearly established

18   federal law as determined by the United States Supreme Court or in its factual determination.  First,

19   Nevada law governs the conditions and requirements for adjudication as a habitual criminal in

20   Nevada.  Under the Nevada statute, the state must prove at least three prior felony conviction before

21   the sentencing court can enhance the sentences for robbery and burglary to the terms imposed

22   against petitioner as a habitual criminal.  NRS § 207.101(b).  Moreover, under that statute, it is not

23   necessary that an out of state conviction be for a felony, so long as the crime for which the defendant

24   was convicted would constitute a felony under Nevada law.  *Id.*

25

26

1    Second, it has long been determined that an adjudication under the Nevada habitual criminal

2    statute does not require a jury.  *See Howard v. State,* 83 Nev. 53, 422 P.2d 548 (1967); *see also,*

3    *O'Neill v. State,* 123 Nev. 9, 153 P.3d 38, 40 (Nev.) *cert. denied,* 128 S.Ct. 153 (2007); *Tilcock v.*

4    *Budge,* 538 F.3d 1138, 1143-44 (9th Cir. 2008)( confirming that Nevada's habitual sentencing

5    statute does not violate *Apprendi v. New Jersey,* 530 U.S. 466, 120 S. Ct. 2348 (2000).).

6    Third, where the transcript of proceedings supports the state court's factual determination

7    that petitioner testified at the sentencing hearing regarding his involvement in an armed altercation,

8    there is no basis to grant relief on this claim.  The state proved at least proper prior felony

9    convictions and the court exercised its discretion in imposing the sentence.  Ground three is without

10   merit and petitioner has not demonstrated the state court's decision was unreasonable under 28

11   U.S.C. § 2254(d).

12   Ground Four

13   Finally, petitioner claims his right to the effective assistance of counsel, as guaranteed by the

14   Sixth and Fourteenth Amendments, was violated when counsel failed to challenge the validity of the

15   prior conviction and counsel failed to provide sound legal advice in advising petitioner not to accept

16   a negotiated plea for 4 to 10 year sentence.  Petitioner alleges that counsel advised him he could not

17   be convicted of robbery or adjudicated a habitual criminal and he relied on this advice in deciding

18   not to accept the plea agreement.  He asserts that the Nevada Supreme Court's handling of the claim

19   was contrary to and an unreasonable application of clearly established United States Supreme Court

20   precedent.

21   To establish ineffective assistance of counsel "a defendant must show both deficient

22   performance by counsel and prejudice." *Premo v. Moore*  131 S.Ct. 733, 739 (U.S., 2011) quoting

23   *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S.Ct. 1411, 1419 (2009).  "To establish deficient

24   performance, a person challenging a conviction must show that 'counsel's representation fell below

25   an objective standard of reasonableness.'" *Strickland v. Washington*, 466 U.S.668, 688, 104 S.Ct.

26

14

1   2052 (1984). A court considering a claim of ineffective assistance must apply a "strong

2   presumption" that counsel's representation was within the "wide range" of reasonable professional

3   assistance.  *Id.*, at 689. The challenger's burden is to show "that counsel made errors so serious that

4   counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

5   *Id.*, at 687.  "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that,

6   but for counsel's unprofessional errors, the result of the proceeding would have been different.' *Id.*

7   The question is whether an attorney's representation amounted to incompetence under 'prevailing

8   professional norms,' not whether it deviated from best practices or most common custom. *Id*. at 690.

9            The *Strickland* Court instructed that review of an attorney's performance must be "highly

10   deferential," and must adopt counsel's perspective at the time of the challenged conduct, in order to

11   avoid the "distorting effects of hindsight."  *Id.* at 689.  A reviewing court must "indulge a strong

12   presumption that counsel's conduct falls within the wide range of reasonable professional assistance

13   ... [and] the [petitioner] must overcome the presumption that ... the challenged action might be

14   considered sound trial strategy."  *Id*. (citation omitted).

15            In the first part of this ground for relief (part A), petitioner alleges that counsel was

16   ineffective for failing to challenge the validity of the prior convictions.  This claim is merely

17   conclusory failing to provide the Court with any basis to decide that a challenge to the validity of the

18   prior convictions would have been appropriate or effective.  Such conclusory allegations do not

19   warrant review or relief. *James v. Borg,* 24 F.3d 20, 26 (9th Cir. 1994); *Schuman v. Wolff,* 543

20   F.Supp. 104, 109 (D. Nev. 1982) (a petitioner must make more than bare allegations as to both the

21   alleged deficiences and the prejudice suffered); *see also Adams v. Armontrout,* 897 F.2d at 334;

22   *Blackledge v. Allison,*  431 U.S. at 76.

23            Moreover, the Nevada Supreme Court's denial of the claim on the basis that petitioner had

24   failed to show prejudice from the lack of objection is not objectively unreasonable, given the

25   discussion *supra.,* under Ground Three.  The Nevada Supreme Court noted that on direct appeal the

26

15

1    the various convictions were considered and it was determined they had been properly validated.

2    Thus, the court properly determined that petitioner could not show the requisite prejudice from

3    counsel's failure to object to the validity of the prior convictions.  *See* ex. 8, p. 2.

4        In the second part of this claim (part B), petitioner specifically argues that his counsel gave

5    him bad advice related to a proposed plea agreement telling him that he could not "as a matter of

6    law" be convicted of robbery or the habitual criminal statute.  Petitioner also alleges that "had [he]

7    known he would have accepted the plea agreement."  Petition, p. 9.

8        The Court notes that in state court, petitioner argued that counsel was ineffective "for failing

9    to provide Petitioner with sound legal advice when the State of Nevada offerred [sic] a 4 to 10 year

10   plea agreement, counsel failed to investigate the validity of the plea."  Ex. 6, p. 7.  That claim is

11   significantly different than the claim presented to this Court.

12       28 U.S.C. § 2254(b) requires a petitioner to present his claims to the state courts prior to

13   bringing them in a federal petition. A petitioner satisfies the exhaustion requirement by fairly

14   presenting to the highest state court all federal claims before presenting the claims to the federal

15   court. *See Baldwin v. Reese*, 541 U.S. 27, 29, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); *Duncan v.*

16   *Henry*, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); *Picard v. Connor*, 404 U.S. 270,

17   276, 92 S.Ct. 509 (1971); *Wooten v. Kirkland*, 540 F.3d 1019, 1025 (9th Cir.2008). A federal claim

18   is fairly presented if the petitioner has described the operative facts and the federal legal theory upon

19   which his claim is based. *See Wooten*, 540 F.3d at 1025 ("Fair presentation requires that a state's

20   highest court has 'a fair opportunity to consider ... and to correct [the] asserted constitutional defect.'

21   "); *Lounsbury v. Thompson*, 374 F.3d 785, 787 (9th Cir.2004) (same) (quoting *Picard*, 404 U.S. at

22   276, 92 S.Ct. 509); *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir.1999). While "new factual

23   allegations do not ordinarily render a claim unexhausted," *Beaty v. Stewart*, 303 F.3d 975, 989 (9th

24   Cir.2002), a claim is unexhausted if new factual allegations "fundamentally alter the legal claim

25   already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260, 106 S.Ct. 617 (1986);

26

16

1   *see also Beaty*, 303 F.3d at 989–90; *Weaver*, 197 F.3d at 364.  However, respondents make no

2   argument that this claim is unexhausted. *See* 28 U.S.C. § 2254(b).  In the absence of such an

3   argument, the merits of the claim shall be considered herein. If it is clearly without merit, the claim

4   will be denied under 28 U.S.C. § 2254(b)(2).  However, if the claim is not found to be completely

5   meritless, it must be dismissed without prejudice so that petitioer can attempt to exhaust the claim, if

6   he chooses.

7           This Court cannot say that Ground Four, part B is clearly without merit given the lack of any

8   record or evidence to support such a finding.  Had petitioner in fact been advised by his trial counsel

9   that there was no way "under the law" that he could be convicted of robbery or sentenced under the

10  Nevada large habitual criminal statute, such advice would have been legally incorrect and counsel's

11  performance would be considered outside the "wide range of reasonable professional assistance,"

12  given its lack of legal accuracy.  The prejudice to petitioner would be obvious: a four to ten year

13  sentence instead of the ten year to life sentence he is serving.  However, if counsel had, in fact,

14  advised petitioner that it was *unlikely given the facts,* that he would be convicted of robbery, the

15  answer changes.  In that instance, counsel would have been offering an opinion based on his

16  experience rather than an opinion based on his specific legal expertise and knowledge of the law.

17  Such opinion and advice would not be considered to be outside the wide range of competent

18  representation.

19          Based on the foregoing, part B of Ground Four must be dismissed without prejudice to allow

20  the state court the first opportunity to correct any constitutional errors that it may discern, if

21  petitioner is able to overcome any procedural bars to the claim.

22  **III.     CERTIFICATE OF APPEALABILITY**

23          Should petitioner wish to appeal this final decision on the merits or viability of those claims

24  decided herein, he must receive a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App.

25  P. 22; 9th Cir. R. 22-1;  *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United*

26

*States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001).  Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  "The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.*

Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard.  The Court will therefore deny petitioner a certificate of appealability.

**IT IS THEREFORE ORDERED** that Ground Three, part D is **DISMISSED WITH PREJUDICE** for failing to state a federal claim.

**IT IS FURTHER ORDERED** that Ground Four, part B is **DISMISSED WITHOUT PREJUDICE AS UNEXHAUSTED.**

**IT IS FURTHER ORDERED** that the remaining claims are **DENIED on the merits.**  No certificate of appealability is warranted and none shall issue.  The Clerk shall enter judgment accordingly.

Dated this 3rd day of February, 2013.

UNITED STATES DISTRICT JUDGE

18